UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:22-CR-117-TAV-JEM |
| | ) | |
| KHADIJAH ADAMS, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the Court on the Government's Emergency Motion under 18 U.S.C. § 3145 for Revocation of Magistrate Judge's Release Order [Doc. 6], which has been referred to the undersigned for a report and recommendation [Doc. 15]. *See* 28 U.S.C. § 636(b). Defendant Khadijah Adams was arrested in the Eastern District of New York, brought before United States Magistrate Judge Taryn A. Merkl for a detention hearing, and released on conditions pending trial [Doc. 8 pp. 19–20, 26, 28]. In its motion, the Government asks this Court to reverse Judge Merkl's decision and detain Defendant pending trial, arguing that she poses a serious risk of flight and that no condition, or combination of conditions, will reasonably assure her appearance [Doc. 6]. On December 16, 2022, the Court held a hearing on the Government's motion, at which time the parties presented their respective proffers, exhibits, and arguments.

After a de novo review of the record, including the Rule 5(c)(3) documents received from the Eastern District of New York [Doc. 8], the arguments made by the Government in its motion [Doc. 6], and the respective proffers, exhibits, and arguments presented at the hearing, the Court finds by a preponderance of the evidence that Defendant is a flight risk but that there is a

combination of conditions that will reasonably assure Defendant's appearance as required. Accordingly, the undersigned recommends that the District Judge deny the Government's motion and affirm Defendant Adams's release on conditions pending trial.

I.  PROCEDURAL BACKGROUND

On November 29, 2022, the undersigned issued a warrant for Defendant Adams's arrest for charges related to wire fraud, mail fraud, and money laundering [Doc. 8 pp. 5–6]. Agents with the Federal Bureau of Investigation arrested Defendant the next day at John F. Kennedy Airport in Queens, New York, as she was boarding a plane for Accra, Ghana [*Id.* at 2]. Defendant then appeared before Judge Merkl on December 1, 2022, for an Initial Appearance in Rule 5(c)(3) proceedings and a detention hearing [*Id.* at 26]. Prior to the detention hearing, the United States Probation Office for the Eastern District of New York conducted an interview with Defendant and prepared a Pretrial Services Report ("PSR") in which it recommend that Defendant be released on a moderate unsecured bond pending trial. At the conclusion of the detention hearing, Judge Merkl ordered that Defendant be released on conditions, including a $100,000 unsecured bond that was signed by two sureties [*Id.* at 19–20]. Judge Merkl also denied a request by the Government to stay Defendant's release on bond, and Defendant was released [*Id.* at 26].

The Government then filed the Emergency Motion under 18 U.S.C. § 3145 for Revocation of Magistrate Judge's Release Order [Doc. 6]. In response to the Government's motion, the District Judge stayed Judge Merkl's release order and ordered that Defendant be detained pending resolution of the Government's motion [Doc. 7]. Since Defendant had already been released, however, the Court's Order was never effectuated. The District Judge then referred the Government's motion to the undersigned for a report and recommendation on December 15, 2022

2

[Doc. 15]. At that time, the United States Probation Office for the Eastern District of Tennessee prepared a Memorandum that recommended Defendant be detained pending trial, based on the fact that Defendant was arrested while boarding a plane with a one-way ticket to Ghana, concerns about one of the sureties who signed Defendant's bond, Defendant and her codefendants' foreign ties to Ghana, and Defendant's unknown financial capabilities. The parties then appeared before the undersigned on December 16, 2022, for a hearing on the Government's motion to revoke Defendant's pretrial release [Doc. 18]. Assistant United States Attorney Suzanne Sullivan appeared on behalf of the Government. Attorney Joseph A. Fanduzz appeared on behalf of Defendant Adams, who was also present. The Court received the Government's exhibits [Exhs. 1–4] and heard the parties' proffers, evidence, and arguments before taking the matter under advisement.

## II.  ANALYSIS

"If a person is ordered released by a magistrate judge . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order." 18 U.S.C. § 3145. The district court reviews the decision to release or detain the defendant de novo, meaning "the district court may rely both on the evidence and offers of proof presented at the original detention hearing before the magistrate judge, as well as additional evidence and offers of proof at its discretion." *United States v. McCollum*, No. 3:21-CR-35, 2021 WL 4468937, at *1 (E.D. Tenn. Sept. 29, 2021). The district court "should engage in the same analysis, with the same options, under § 3142 as the magistrate." *United States v. Yamini*, 91 F. Supp. 2d 1125, 1129 (S.D. Ohio Feb. 24, 2000) (citing *United States v. Maull*, 773 F.2d 1479, 1482 (8th Cir. 1985)).

Section 3142, in turn, provides for the release of all persons accused of a federal crime, either on personal recognizance or an unsecured appearance bond, subject to certain conditions, "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). If a defendant poses a "serious risk" of flight, the Government may move for the detention of the defendant pending trial. *Id.* § 3142(f)(2)(A). The court shall detain a defendant, however, only if it finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" *Id.* § 3142(f) & (e). The Government bears the burden of proving by a preponderance of the evidence that an individual poses a risk of flight and by clear and convincing evidence that the individual is a danger to the community. *Id.* § 3142(f). To determine whether a defendant poses a flight risk or danger to the community, the court must weigh the factors set forth in 18 U.S.C. § 3142(g) along with all available conditions of release. *See id.* § 3142(g).[1]

Turning to the § 3142(g) factors, the Court first considers the nature and circumstances of the charged offense. 18 U.S.C. § 3142(g)(1). The Government's motion relates that Defendant and her coconspirators would target elderly individuals through romance scams and by impersonating deployed military personnel in order to obtain large sums of money that were then wired to overseas accounts [Doc. 6 p. 2]. The Indictment charged Defendant with seven counts of

---

[1] The Government concedes that Defendant does not pose a danger to the community [Doc. 6 p. 3 n.1]. Hence, the only question before the Court is whether there is any condition or combination of conditions that will reasonably assure Defendant's appearance as required. For the reasons more fully discussed in the following paragraphs, the Court finds that there are.

4

fraud, mail fraud, and money laundering related to this scheme [Doc. 11].[2] These offenses are not included in those enumerated in § 3142(g)(1). *See* 18 U.S.C. § 3142(g)(1) (considering "whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device").

The circumstances of the charged offenses show that Defendant poses a flight risk because Defendant and her coconspirators used deceptive tactics to obtain large sums of money from elderly victims that were then wired to overseas accounts. *See United States v. Hanson*, No. 3:22-CR-00076, 2022 WL 1813585, at *4–5 (N.D. Ohio May 3, 2022) (finding that although the defendant's fraudulent crimes were not among those listed in § 3142(g)(1), the nature and circumstances evinced a risk of flight due to the deceptive nature of the conspiracy). In addition, Defendant faces a lengthy period of incarceration if convicted, as several of the charged offenses carry a maximum term of imprisonment of twenty years [Doc. 6 p. 5]. *See Hanson*, 2022 WL 1813585, at *5 (finding that a "potentially lengthy period of incarceration incentivizes potential flight 'to some degree'" (citations omitted)). The Court therefore finds that, on balance, the nature and circumstances of the charged offenses indicate Defendant poses a flight risk.

The Court next considers the weight of the evidence against Defendant. 18 U.S.C. § 3142(g)(2). This factor "goes to the weight of the evidence of [flight risk], not the weight of the evidence of the defendant's guilt." *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010). *See also United States v. Villegas*, No. 3:11-CR-28, 2011 WL 1135018, at *8 (E.D. Tenn. Mar. 25,

---

[2] Specifically, Defendant has been charged with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1349 and 1343, two counts of wire fraud in violation of 18 U.S.C. § 1343, two counts of mail fraud in violation of 18 U.S.C. § 1341, one count of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i)–(ii), and one count of conspiracy to launder money in violation of 18 U.S.C. § 1956(h) [Doc. 11].

5

2011) ("In other words, this factor goes to how convincing the government's arguments of dangerousness and risk of flight are." (citation omitted)).  The Government advances two arguments for why the weight of the evidence indicates Defendant is a risk of flight: (1) that she has substantial ties to a foreign country and (2) that she has access to large sums of cash.

As it relates to Defendant's substantial ties to a foreign country, the Government proffered at the December 16 hearing that Defendant is formerly a Ghanian citizen and it is unknown whether she may still hold a dual-citizenship status.  The Government further proffered that Defendant has a strong support system in Ghana, including family members and other individuals like her codefendants, who she could rely upon were she to return to Ghana.  The Government also proffered that Defendant has regularly traveled to—and stayed for an extended period of time in—Ghana over the past few years.  Finally, the Government proffered that Defendant was arrested on the instant offense in the departure terminal of JFK airport.  The Government clarified, however, that at the time Defendant was arrested she had a round-trip ticket[3] and there was otherwise no indication she knew a warrant for her arrest had been issued the previous day.  In response, counsel for Defendant proffered that Defendant's mother, who resides in Ghana, is sick and Defendant was leaving the country to visit her.

As for Defendant's access to large sums of money, the Government proffered that approximately $2,000,000 was funneled through the various accounts used as part of the alleged fraudulent scheme.  Counsel for Defendant countered that that Indictment alleges that the fraudulent scheme occurred over two years ago and included less than $80,000 in purported stolen

---

[3]   In its motion, the Government had initially indicated that Defendant was arrested while boarding a plane with a one-way ticket to Ghana [Doc. 6 p. 5].

funds.  Defense counsel further argued that rather than relying on these outdated funds from two years ago to assess Defendant's current financial resources, the Court should rely on the information included in Defendant's financial affidavit, which indicates Defendant has an estimated net worth of $7,000 and makes $2,800 per month.  The Government stated that it was unsure as to how much money Defendant currently has in her accounts, but it reiterated that approximately $2,000,000 has fraudulently passed through the accounts involved in this scheme since its inception, including thousands of dollars in cash.  The Government further proffered that, although Defendant purports in her financial affidavit to only make $2,800 per month, there is evidence that she has purchased several expensive designer apparel items.

      The Court finds that the weight of the evidence indicates Defendant poses a flight risk.  Defendant's substantial family ties to Ghana, that at least part of the fraudulent scheme occurred in Ghana, and that codefendants currently reside in Ghana are all indicative of Defendant's risk of flight.  The Court gives less weight, however, to Defendant's potential dual-citizenship status because the Government proffered only that Defendant may have retained her Ghanian citizenship.  It is unknown whether she in fact is a dual citizen of this country and Ghana.  *See United States v. Amirnazmi*, No. 08-429-01, 2008 WL 4925015, at *2 (E.D. Pa. Nov. 18, 2008) (detaining the defendant and providing that "any one that has dual passports, dual citizenship with passports even though they are retained by the federal government, is always suspect of having an available avenue to flee").  The Court also gives little weight to Defendant's previous trips to Ghana and the fact that she was arrested as she was boarding a plane to Ghana.  Defendant offered a legitimate, non-criminal, reason for traveling abroad at the time of her arrest and Defendant has only previously traveled abroad approximately once per year for a few weeks at a time.  *See United*

7

*States v. Homedes*, No. 5:22-cr-00033-KKC-MAS, 2022 WL 822153, at *4 (E.D. Ky. Mar. 18, 2022) (finding the defendant was not a risk of flight when he "travel[ed] internationally only for short periods for visits" and there was no evidence his trips were "criminal or otherwise illegitimate," in contrast to other cases where courts relied on "suspicious, frequent international travel or long-term international residence" in finding "additional flight evidence").

As for Defendant's access to substantial amounts of money, the funds that were allegedly trafficked as part of the conspiracy—whether $2,000,000 or $80,000—were purportedly obtained over two years ago and there is no indication that Defendant currently has access to those funds. At the same time, that substantial amounts of currently-unaccounted-for funds were allegedly transferred to individuals in a foreign country under fraudulent pretenses raises the question of whether these funds could also be easily transferred back to Defendant in kind. The combination of Defendant's substantial ties to Ghana—including not only her family members but also codefendants—and the large sums of yet-unaccounted-for money lead this Court to find that, on balance, the weight of the evidence favors finding Defendant is a risk of flight.

The Court must next consider a host of factors relating to the history and characteristics of Defendant. 18 U.S.C. § 3142(g)(3)(A). Defendant is a twenty-six-year-old resident of New Jersey. Defendant was born in Bole, Ghana and immigrated to the United States in 2012. At the time of her arrest, Defendant resided with her sister in New Jersey. Defendant's father and stepbrother also live in New Jersey, while the remainder of her family, including her mother and grandparents, reside in Ghana. As noted by the Government at the hearing, Defendant has no ties to the Eastern District of Tennessee.

As for employment, Defendant advised she is self-employed as a makeup artist and has been since high school. She further advised that she and her sister own a skin care beauty line that was started in 2019—which her sister confirmed as true. As noted previously, Defendant makes approximately $2,800 per month in income and has a net worth of $7,000. Defendant denied having any history of mental health or substance abuse issues, and a criminal record check revealed no prior criminal history. Finally, as to Defendant's appearance at court proceedings, the only evidence of this factor is that Defendant appeared on her own recognizance to the December 16 hearing. At the hearing, counsel proffered that Defendant had previously prepared travel arrangements to attend the hearing when it was set for a later date and, upon learning the hearing date had been moved up, immediately purchased a plane ticket to attend the earlier hearing date.

The Court finds that Defendant's history and characteristics weigh against finding that Defendant poses a flight risk. Although Defendant has no ties to the Eastern District of Tennessee, *see United States v. Guerra-Rodriguez*, 59 F.3d 171 (Table), No. 95-5773, 1995 WL 378552, at *1 (6th Cir. June 23, 1995) (considering "lack of ties to Tennessee as [a] factor[ ] in evaluating the risk of flight"), and substantial ties to Ghana, she also has ties to New Jersey where she is currently released on supervision, including several family members who currently reside there. Defendant also has no criminal history, no reported substance abuse or mental health issues, and she has appeared for all court proceedings despite being released on conditions in another district. The Court therefore finds that while some of Defendant's history and characteristics weigh in favor of her detention, on balance, her history and characteristics support release.

The final factor the Court must consider is the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release. 18 U.S.C. § 3142(g)(4).

9

"[T]his factor has minimal value [when] defendant poses a serious risk of flight," as opposed to a danger to the community, particularly when "there is no allegation that the defendant engaged in violence or that she poses any risk of physical danger to another person or the community." *United States v. Xiaorong You*, No. 2:19-CR-14, 2019 WL 2426659, at *6 (E.D. Tenn. June 10, 2019). Yet, "[t]he economic harm resulting from identity-related offenses may appropriately [be] considered under [§ 3142(g)(4)]." *Hanson*, 2022 WL 1813585, at *7. Here, there is no allegation that Defendant poses any risk of physical danger to another person or the community, but the circumstances related to her offense do present concern about future economic harm given the allegations of fraud. This factor, therefore, favors detention, albeit less so than other factors.

In considering the § 3142(g) factors together, the Court finds that, absent any conditions of release, Defendant would pose a risk of flight due to her substantial ties to, and support system in, Ghana—the country in which at least part of the allegedly fraudulent scheme was carried out, her potential access to large sums of yet-unaccounted-for money, and the significant term of imprisonment she could face if convicted. Section 3142(e) requires, however, that the Court consider whether any "condition or combination of conditions will reasonably assure the appearance of the person as required."

In this case, the Court finds that there is a combination of conditions that would reasonably assure Defendant's appearance as required. Specifically, the Court finds that the conditions of release set forth by Judge Merkl are sufficient, but no greater than necessary, to ensure Defendant's appearance. Defendant has been ordered to surrender all passports to the United States Probation Office and not obtain other passports or international travel documents [Doc. 8 p. 19]. To this end, Defendant's passport was seized at the time of her arrest and she has since turned over her passport

10

identification cards to the United States Probation Office for the Eastern District of New York. Judge Merkl also placed Defendant on home detention with location monitoring [*Id.*]. Finally, Judge Merkl issued a bond in the amount of $100,000 that was secured by financially responsible sureties [*Id.*].

At the hearing, the Government questioned the effectiveness of some of these conditions in deterring Defendant from flight. Specifically, the Government proffered that the Ghanaian embassy website detailed a process in which Defendant could pay $250 to receive dual citizenship, at which point she could potentially flee the United States without a passport. There is no information before the Court, however, to suggest Defendant took any steps to engage in this process. At the hearing, the Government also took issue with the issuance of the bond to the extent Defendant's sister was listed as one of the sureties. The Government presented exhibits at the hearing showing that Defendant's sister may have been involved in the conspiracy to the extent she received wire transfers and packages containing large sums of money at her residence [Exhs. 1, 2] and further proffered that Defendant's sister was currently out of the country in Ghana. But Defendant's sister is not charged in the Indictment, she was also out of the country at the time she signed as a surety on the bond, and she works as a software engineer in the United States making $140,000 per year. In addition, Defendant's sister is one of two sureties who signed Defendant's appearance bond [Doc. 8 p. 19]. The Court therefore finds that the appearance bond, along with all of the other conditions of release imposed by Judge Merkl, sufficiently ameliorate Defendant's risk of flight to the point that the Court is reasonably assured Defendant will continue to appear as required.

## V. CONCLUSION

Based upon a de novo review of the record, including the information contained in the Rule 5(a) documents [Doc. 8], the Government's motion [Doc. 6], and the Memorandum of the United States Probation Office for the Eastern District of Tennessee, as well as the proffers, exhibits, and arguments from the parties at the December 16 hearing, and considering the factors set forth in 18 U.S.C. § 3142(g), the Court finds by a preponderance of the evidence that Defendant is a flight risk but that the combination of conditions set forth by Judge Merkl will reasonably assure Defendant's appearance as required. Accordingly, the undersigned **RECOMMENDS** that the District Judge **DENY** the Government's Emergency Motion under 18 U.S.C. § 3145 for Revocation of Magistrate Judge's Release Order [Doc. 6] and **AFFIRM** Judge Merkl's release of Defendant on conditions pending trial.[4]

Respectfully submitted,

*Jill E. McCook*
Jill E. McCook
United States Magistrate Judge

---

[4] Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time waives the right to appeal the district court's order). The District Judge need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).